## Hunt, Receiver, v. Conner, Administrator.

[No. 3,239.   Filed January 4, 1901.]

Master and Servant.—*Construction of Employers' Liability Act.*— The employers' liability act (Acts 1893, p. 294, as amended, Acts 1895, p. 148, §7083 *et seq*. Burns 1894, except §7084, repealed, §5206 s. *et seq*. Horner 1897) being in derogation of the common law is to be strictly construed, but being a remedial act it must receive such a liberal construction with reference to the objects it was intended to accomplish and for the purpose of advancing the remedy as will carry into effect its true beneficial purpose. *pp. 43-45.*

Same.—*Receivers.—Employers' Liability Act.*—Where the property of a railroad or other private corporation is in the hands of a receiver who is operating the same and conducting business on behalf of the corporation, the receiver, as such, is liable under the provisions of the employers' liability act (Acts 1893, p. 294) for injuries to his employes to the same extent that the corporation itself would be liable under similar circumstances. *pp. 45-47.*

Death.—*Measure of Damages.—Loss of Society.*—The damages for causing death recoverable on behalf of a child or other relative of the deceased must be confined to the loss of something having a money value, and cannot include compensation by way of solace for wounded feelings or loss of society. *pp. 47-50.*

Same.—*Measure of Damages.—Personal Services of Father.*—Where the beneficiaries in an action for injuries causing death are the wife and children of the deceased, the damages are not restricted to the probable earnings of the deceased, but there may be added thereto the value of his personal services in the superintendence and care of his family, the education of his children and the performance of acts of paternal assistance to which he would be legally obligated and which might be reasonably expected. *p. 50.*

Same.—*Evidence.—Permanent Disability of Child.*—In an action for personal injuries causing death, whether prosecuted under the provisions of the employers' liability act (Acts 1893, p. 294) or not, evidence that one of the children of deceased is afflicted with a permanent disability so that she will never be able to do anything for herself is admissible as tending to show that she will need a

father's care, protection and support as long as she lives, and to establish the extent of her loss. The fact that the widow of the deceased and his other children will share in the damages recovered does not destroy the admissibility of evidence showing the material loss suffered by one child by reason of its father's death. *pp. 47-55.*

TRIAL. — *Instructions.* — *Assumption of Undisputed Facts.* — The assumption in an instruction of the truth of facts that were clearly proved by undisputed evidence is not reversible error. *pp. 55, 56.*

From the Wells Circuit Court. *Affirmed.*

*G. G. Guenther* and *A. B. Clark,* for appellant.

*A. N. Martin, W. H. Eichhorn, P. B. Manley,* and *W. D. Lett,* for appellee.

BLACK, J.—The appellee as administrator of the estate of Jesse P. Conner, deceased, recovered judgment for $2,000 against the appellant as receiver of the Toledo, St. Louis, and Kansas City Railroad Company, for the death of the appellee's intestate. There were two paragraphs of complaint, a demurrer to each of which was overruled. On the trial, the court reconsidered its ruling on the demurrer as to the first paragraph of the complaint, and sustained the demurrer to that paragraph, and the trial proceeded and the verdict for the appellee was rendered on the issue made upon the second paragraph of the complaint.

The second paragraph was based upon the alleged negligence of a train conductor, the intestate's superior officer, whose order the intestate was obeying in undertaking as a brakeman to perform the duty of setting the brake of a freight car, and the negligence of the engineer of the train, the railroad at the time (September 30, 1895,) being operated by a receiver appointed by the circuit court of the United States for the district of Indiana, as whose successor the appellant, since appointed by the same court, was still operating the railroad.

The appellee proceeded under our statute (§285 Burns 1894, §284 Horner 1897) providing that when the death of one is caused by the wrongful act or omission of another,

the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission, etc.

It is agreed by counsel that at common law the facts stated in the second paragraph would not constitute a cause of action against the appellant, for the reason that they show that the injury to the intestate causing his death resulted from the negligence of his fellow servants, the conductor and engineer; and it is agreed that in this paragraph the right of recovery, if any, is founded upon the provisions of the employers liability act of 1893, §7083 *et seq.* Burns 1894, (except §7084 repealed in 1895), §5206s *et seq.* Horner 1897, Acts 1893, p. 294, Acts 1895, p. 148.

It is expressly provided in our employers liability act that when death results from an injury contemplated in that statute, "the action shall survive and be governed in all respects by the law now in force as to such actions," reference being made to the above mentioned statute providing for recovery when the death of one is caused by the wrongful act or omission of another.

The only objection urged against the second paragraph of complaint is thus expressed by counsel for the appellant, referring to the statute of 1893 above mentioned: "It will be noticed that this enactment applies only to 'every railroad or other corporation, except municipal, operating in this State.' This action was brought against a *receiver* appointed by the United States court for the district of Indiana, and not against a *railroad or other corporation, except municipal.* Our contention is that this statute, being in derogation of the common law, cannot be construed or extended to include a class of persons not expressly named in the statute itself, and that therefore this statute cannot control the liability of *receivers,* they not being specifically mentioned in the act."

In the statute there is no mention of receivers, and the

question is whether or not the statute providing by its terms for certain liabilities of corporations only may be construed as imposing like liabilities upon the receiver of a corporation holding its property and carrying on its business under appointment of the court. It is true, as suggested by counsel, that this act, being in derogation of the common law, is, under the general rule, to be construed strictly.

A chief purpose of the legislature in the enactment of the statute was to correct the hardship of the common-law rule as applied by the courts, in actions against employers, to recover damages for injuries suffered by their employes through the conduct of co-employes. The rule was not abrogated, but was conservatively limited, the new liability created being made to extend, not to employers carrying on their undertakings as individuals, but to those who conduct their business through corporate combinations, by which method the affairs of business life, for various reasons, had come to be carried on more and more, railroad corporations being specially mentioned in the act. Nor was this liability extended to the conduct of all employes by which other employes are injured, but the classes of employes for whose conduct liability was so imposed were designated. Within these purposed changes, the supposed need and demand for which manifestly induced the enactment of the law, it is to be construed so as not to extend the increased liability beyond the expressed intention of the legislature. Though the statute thus effects a change in the common law, it is a remedial act, and for the purpose of advancing the remedy and carrying into effect the true beneficial purpose, it should be liberally construed with reference to the object uppermost in the mind of the lawmaker. The reason for such a remedial statute applies not more strongly to a corporation under the headship of an officer or officers designated by its charter or selected by the corporators, than to a corporation managed and controlled by the court's receiver through persons who for the time being are his employes,

who generally, indeed, are the old employes of the corporation; and the remedy provided by the legislature would lose much of its intended effect and supposed virtue if it can not be applied to corporations under receiverships.

When an action is brought against a receiver of a corporation for damages suffered by the plaintiff through the management of the property of the corporation while in the custody of the receiver, he is regarded as the representative of the corporation, and is entitled to set up any defense which would have been available to the corporation if such damages had been inflicted by it while in possession of its property. The action in such case is not against the receiver individually, but is against him in his official character. "It is the person whose property will be applied to the payment of the judgment who is the real defendant." *Bartlett* v. *Keim,* 50 N. J. L. 260, 13 Atl. 7. A receiver of a railroad company is in general bound to perform such public duties connected with the operation of the road as the company was obliged to perform; and he is in general held liable for torts for which the corporation would be liable under like circumstances.

The grounds of public policy and necessity which lie at the foundation of the unquestioned liability of a receiver to pay out of the fund under his special control damages for the torts of his employes in the management of the property exist with the same real potency whether the torts be in violation of common-law duties or of statutory duties. One who has suffered from a wrong which a corporation would be bound to redress if not under receivership has no more meritorious a cause than one who has suffered a like wrong under conditions differing only in the fact of the existence of a receivership; and if the injured person can have no remedy against the receiver, his injury would in general be without any substantial redress.

A receiver operating a railway under the control of the court exercises the franchises of the corporation for the

benefit of the corporation and its creditors, and there can be no distinction based upon any sound reason why he should not be responsible in respect to the statutory duties of the corporation as well as in regard to its common-law duties. The action in such case is in effect against the corporate property in his possession, or substantially against the corporation in his hands for the time being. It can not be supposed to have been the intention of the legislature in the enactment of the statute of 1893 in question to increase thereby the liabilities of corporations while managed by the corporate officials but not while managed in substantially the same manner so far as their employes and the public are concerned by receivers. Whether a railroad be for the time under the management of a trustee or the court's receiver, it is within the meaning of the remedial purposes of the provisions of this statute as truly as is a railroad operated by its officers. To construe the statute otherwise, as we are now asked to do, would be sticking to the letter at the sacrifice of the meaning. There is some conflict in the decisions, but the greater weight of authority sustains our conclusion. See *Hornsby* v. *Eddy,* 56 Fed. 461, 5 C. C. A. 560; *Rouse* v. *Hornsby,* 67 Fed. 219, 14 C. C. A. 377; *Rouse* v. *Harry,* 55 Kan. 589, 40 Pac. 1007; *Rouse* v. *Red-inger,* 1 Kan. App. 355, 41 Pac. 433; *Sloan* v. *Central Iowa R. Co.,* 62 Iowa 728, 16 N. W. 331; *Farrell* v. *Union Trust Co.,* 77 Mo. 475; *Peirce* v. *Van Dusen,* 78 Fed. 693, 24 C. C. A. 280; *Mikkelson* v. *Truesdale,* 63 Minn. 137, 65 N. W. 260; *Wall* v. *Platt,* 169 Mass. 398, 48 N. E. 270. We are not strongly impressed with the contrary decisions in Texas and Georgia urged upon us by the learned counsel for the appellant. See *Turner* v. *Cross,* 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262; *Henderson* v. *Walker,* 55 Ga. 481.

In Thompson on Corp. §7159, referring to the Texas decisions which deny the liability of a receiver under the statute of that state which gave a right of action for injuries resulting in death caused by the negligence of a proprietor,

owner, charterer or hirer of a railroad, etc., or by the negligence of his servants or agents, it is said by the learned commentator: "But the legislature intervened and amended the law so as to abrogate a rule of construction so palpably inexcusable, and conferred the right of action.   The rule of public policy which makes receivers of railroads answerable for the damages committed in the operation of the properties in their hands, out of funds in their custody, to precisely the same extent, and under the same circumstances as the corporation, if in custody of the property, would be answerable,—requires that they should be answerable for damages resulting in death, whenever the corporation would have been so answerable; and other courts have so held whenever the question has been presented to them."

In Elliott on Railroads, the learned authors in a chapter relating to employers liability acts, §1341, referring to the conflict in the cases upon the question whether statutes defining the duties and liabilities of railroad companies to their employes apply to receivers operating railroads under order of court, say: "We think that ordinarily such statutes do apply to receivers.   *   *   *   If he undertakes to operate the railroad he must do it upon the terms and conditions which the law prescribes, and the law as to the duty to employes operates upon him substantially as it did upon the railroad corporation to whose rights he succeeded."

On the trial, the widow of the intestate, a witness on behalf of the appellee, testified without objection that the deceased was forty-one years of age, in good health; that he was sober and industrious; that he worked every day, and earned as wages $2 a day; that the witness was left without any means of support other than her own labor, after her husband died; that she had only what was in the house, valued at $50; and that the deceased left four children, the oldest a girl of fourteen.   In her examination in chief, on behalf of the appellee, she was interrogated with reference to these children as follows: "Now, you may

tell the jury, Mrs. Conner, what the condition of those children were, all of them, as to any of them being an invalid, and if so requiring constant attention and care." To this question the appellant objected, "for the reason that it would not enhance the damages." The objection being overruled, the witness answered: "My oldest little girl is afflicted; she is a care, and will never be able to do anything for herself; the other children of course are in good health." The action of the court in permitting the witness to answer this question, over the objection and exception of the appellant, was assigned as a cause in the appellant's motion for a new trial. Our statute above mentioned providing for the maintenance of an action by the personal representatives of one for his death caused by the wrongful act or omission of another does not expressly provide for any measure of damages, except that they shall not exceed $10,000, the language of the statute being as follows: "When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages can not exceed $10,000 and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed as personal property of the deceased." It is provided in our employers liability act, referred to above: "The damages recoverable under this act shall be commensurate with the injury sustained unless death results from such injury, when, in such case, the action shall survive and be governed in all respects by the law now in force as to such actions.

It is contended on behalf of the appellant, in effect, that the plaintiff is entitled to recover only for pecuniary loss suffered by the beneficiaries, and that the attention of the jury must be directed and confined solely to the physical condition, habits of industry, ability to earn money and

other attributes of the decedent, and then, if a recovery is had, the law will make the distribution, regardless of what may be the particular needs or necessities of the distributees; that the statute makes no provision that any of the distributees shall receive any greater or different amount because of his or her individual needs, but that in the eyes of the law the beneficiaries stand as equals, and that the condition of dependence of the beneficiary is immaterial.

It is admitted in argument that an afflicted child might be damaged to a greater extent by reason of the death of the father than a child not afflicted, but it is claimed that the question is, not how much the wife and each of the children separately by reason of her or its peculiar circumstances or condition has been injured, but how much would the decedent, if he had lived, probably have earned and left; that when this amount has been ascertained, it becomes the measure of their damages.

Our statute here in question does not define or in terms characterize the damages recoverable. It does not, as do some of the statutes of other states providing for recovery for causing death, designate the damages recoverable as pecuniary damages. Yet under the construction uniformly placed upon it, the damages must be pecuniary or material as distinguished from compensation for injury to the affections or sentiments. The recovery can not be for the injury to the deceased or for loss to his estate, but must be confined to loss suffered by the beneficiaries, for whose benefit the personal representative prosecutes the action as their trustee. There can be no recovery of compensation by way of solace for wounded feelings or for loss of the society and companionship of a relative. While the damages must be confined to loss of something to which a money value may be attached by the jury, they include compensation for losses which are difficult of exact estimation and the damages for which are, and of necessity must be, left to the discretion of the jury upon somewhat uncertain data.

The mode of distribution of the amount recovered provided by the statute does not determine the measure of damages. That method saves the sum recovered from becoming a part of the decedent's estate subject to the claims of creditors, and bestows it all upon the beneficiaries, but the rule for apportionment of the fund among the beneficiaries is arbitrarily adopted, and is perhaps in general as equitable in its application as are the provisions of the law of distribution from which it is borrowed, in their practical application. It is not the relief of the needs, as such, of the beneficiaries that is to be provided for, but it is compensation for their losses that is to be awarded. The wrongdoer is not responsible for distress or disability which he did not cause, but he is answerable for the injurious consequences of the death which he has wrongfully caused, so far as they may be adequately compensated with money.

Where, as here, the deceased leaves a widow and infant children, the implication of law is that they sustain some injury which the wrongdoer must compensate in damages, the amount of which depends upon the evidence. *Korrady* v. *Lake Shore, etc., R. Co.*, 131 Ind. 261; *Louisville, etc., R. Co.* v. *Buck*, 116 Ind. 566, 9 Am. St. 883, 2 L. R. A. 520. It is the duty of a husband and father to support his wife and children. There rests upon him the obligation toward his minor children of maintenance, care, nursing and medical attendance. *Mayhew* v. *Burns*, 103 Ind. 328; *Malott* v. *Shimer*, 153 Ind. 35. The obligation, disposition, and ability to earn wages or to conduct business and to care for, support, advise, and protect those dependent upon the father are proper matters to be shown to aid the jury in arriving at the amount of damages. *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357. The loss of parental training to which the children of the decedent would have been entitled if he had continued to live is a proper element of the damages. See *Malott* v. *Shimer, supra.* Where the action is brought for the benefit of the widow and children of the

deceased, the plaintiff is entitled to recover the damages suffered by the beneficiaries through the loss of support and maintenance, in addition to the prospective accumulation of property. *Lake Erie, etc., R. Co.* v. *Mugg*, 132 Ind. 168. The damages are to be considered, in each case brought by a personal representative under this statute, according to its own circumstances. "In assessing damages resulting to the wife, children, or next of kin, the ability of the deceased to have provided for the support and education of those dependent upon him, the number and degree of kindred mentioned in the statute, and their dependence upon him for support are important considerations." *Mayhew* v. *Burns, supra,* 335.

In *Board, etc.,* v. *Legg,* 93 Ind. 523, 47 Am. Rep. 390, it was held that the loss which may be taken into account is not confined to a loss of actual services capable of a direct and exact money admeasurement, and the court commended the doctrine that compensation may be recovered for the loss of a parent's care and training and education, it being remarked, in effect, that the capacity for the work of life which may thereby be increased may be valuable even in a pecuniary sense.

In *Louisville, etc., R. Co.* v. *Rush,* 127 Ind. 545, an action by a father for the death of his infant daughter, the court approved an instruction that in estimating the plaintiff's damages the jury might consider the condition of his family at the time of the alleged accident, and take into account all the services that this child might reasonably have performed until her majority; and that such services might include actual labor in helping to carry on the household affairs and the pecuniary value of all acts of kindness and attention which it might reasonably be anticipated she would have performed for the plaintiff and his family until her majority, that would administer to their comfort as well as their necessities; but that the jury should not consider acts of affection, simply, and loss of companionship; and

that the recovery was limited by the law to the actual pecuniary loss. The court said that the jury could not rationally estimate and determine the amount of the father's pecuniary loss without considering the condition of his family with respect to and use for the child. See *City of Elwood* v. *Addison, ante,* 28.

In *Hudson* v. *Houser,* 123 Ind. 309, 316, the daughter of the decedent who had kept the expense account of the family was permitted to testify from her knowledge so gained, what, in her opinion, the household and living expenses of the family were per year during three specified years. This testimony was held to be competent as tending to show the loss sustained by the decedent's family because of his death.

The child's loss of his father's care and training is one element in the true measure of damages, which is the pecuniary loss of those entitled to recover. *Pittsburg, etc., R. Co.* v. *Burton,* 139 Ind. 357, 377. The value of the services of the deceased to his wife and infant children until they attain their majority, of a personal character, and independent of those things purchasable from his earnings, should not be excluded from the jury's estimate of the damages. These the jury in the range of the discretion given them under the law and the evidence, and applying the results of their common observation and daily experience, may estimate and add to the net earning capacity of the decedent, after deducting his personal expenses, as they may be estimated.

The number of children, and their ages, together with the age and habits of the deceased, are proper matters for consideration in estimating the amount of damages. *Board, etc.,* v. *Legg,* 110 Ind. 479, 481.

In *Union Pacific R. Co.* v. *Dunden,* 37 Kan. 1, 14 Pac. 501, it was said: "The jury had presented to them evidence of the parents of the deceased; their position in life; the occupation of the father; the condition of his health;

the age of his son; his intelligence; his ability to earn money, etc.; and it was their province, from this evidence and their general knowledge, to form an estimate of the damages with reference to the pecuniary injuries, present and prospective, resulting to the next of kin."

In *Lockwood* v. *New York, etc., R. Co.,* 98 N. Y. 523, an action brought by an administrator for causing the death of his intestate who left seven children, all adults, it was held not error to admit evidence that the intestate's daughter who lived with him was afflicted with some disease, and that therefore she was not able to work as she otherwise would have been.

In *McKeigue* v. *City of Janesville,* 68 Wis. 50, 57, 31 N. W. 298, an action by the personal representative for the death of a widow who left surviving her a number of children, some of them minors, it was held not error to permit the plaintiff to prove that two of the younger children were in poor health. It was said by the court that this was competent as tending to show that the loss of their mother was a pecuniary loss to them especially; that it was competent on the question of damages; and that because incidentally, under the statute, the other children might be benefited by this evidence, furnished no good reason for excluding it. See, also, *Johnson* v. *Chicago, etc., R. Co.,* 64 Wis. 425, 25 N. W. 223.

In *Pennsylvania Co.* v. *Keane,* 143 Ill. 172, 32 N. E. 260, under a statute giving the action, which provided that the damages should be given as a fair and just compensation for the pecuniary injuries resulting from the death to the wife and next of kin of the deceased person, it was said: "It can not well be said that proof that the wife or next of kin of the deceased were, at the time of his decease, dependent upon him for support, or that he was her or their sole support, is wholly immaterial and irrelevant to any point at issue in the case."

In *Staal* v. *Grand Rapids, etc., R. Co.,* 57 Mich. 239,

245, 23 N. W. 795, it was said by the court through Campbell, J., that "where the head of a family is taken away, there is a distinct relation between the family circumstances and the family supporter. In such a case we think the fullest insight into the family circumstances is of value in determining to what extent they are injured by the loss of their head."

In *Baltimore, etc., R. Co.* v. *Mackey,* 157 U. S. 72, 93, 15 Sup. Ct. 491, 39 L. Ed. 624, it was said, per Mr. Justice Harlan: "The statute giving the remedy expressly excludes the creditors of the deceased from any interest in the recovery, and declares not only that the judgment shall inure exclusively to the benefit of his family, but that the damages, not exceeding $10,000, shall be assessed 'with reference to the injury' done 'to the widow and next of kin of such deceased person.' Under such a statute, it is entirely proper that the jury should take into consideration the age of the deceased, his health, strength, capacity to earn money, and family. The injury done to a family consisting of a widow and helpless young children, who depended for support entirely upon the labor of a husband and father whose death was caused by the wrongful act of others, is much greater than would be done to any 'next of kin' able to maintain themselves and who have never depended, and had no right to depend, upon the labor or exertions of the deceased for their maintenance."

Whatever may be the constructions placed by the courts of other states upon their own peculiar statutes, in this State, when the beneficiaries are the wife and children of the deceased, the damages are not restricted to the probable earnings of the deceased, but there may be added thereto the value of his personal services in the superintendence and care of his family and the education of his children and the performance of acts of paternal assistance to which he would be legally obligated and which might reasonably be expected.

It would seem proper that any circumstance which would render it reasonably probable that a material benefit would have been enjoyed through the continuance of the life of the decedent might go to the jury. Whatever material need of a surviving minor child it may reasonably be presumed would have been supplied by the father if alive, and is lost through his death or must be provided for from some other source, is a pecuniary loss. If it be a permanent incapacity of an infant daughter, it is not beyond the discretion of the jury to determine that the father if he had survived would have continued during its life to provide for it as he would have continued to provide for his wife during the joint lives of the husband and wife. The evidence of the existence of the permanent disability and consequent need of a father's continued care and protection and support is no more immaterial or remote in such an inquiry than evidence, in addition to proof that children survived, of the number thereof and of their respective ages. The evidence to which the appellant objected did not merely prove a need of the beneficiary; it tended, we think, in this instance, to prove also a material loss, and therefore, it was not inadmissible.

Counsel for appellant criticise instructions numbered two and five given to the jury at the request of the appellee. By the former the court instructed that if the jury should find from the evidence that the appellee's intestate was in the employ of the appellant on the 30th day of September, 1895, as a freight brakeman or yard switchman, at the city of Marion, Indiana, and that while in such employment he was then ordered and directed by the conductor or yardmaster or other person in charge of the train of cars upon the railroad of the appellant, to set the brake upon a car of the appellant, which car the appellant was then and there switching from appellant's main track to appellant's sidetrack, it was the duty of the intestate to obey such order or direction, using due care and caution in doing so. The

evidence clearly showed that the intestate was under the conductor or yard-master who had charge of the train, and subject to his orders, at the time in question, and there is no pretense to the contrary. In view of this unquestionable state of facts, we could not reverse the judgment on the ground of undue assumption thereof in this instruction.

What we have said above in discussing the complaint in relation to the liability of the receiver for the negligent acts of his employes sufficiently disposes of the appellant's objection to the fifth instruction.

Upon the matter on which the appellant's learned counsel contend the evidence was insufficient, there was conflict in the testimony, and there being some evidence upon which the jury could decide the matter as it was decided, we can not disturb that result.

Judgment affirmed.

Henley, J., dissents from that part of the opinion holding that evidence of the physical condition of the children of decedent is admissible to enhance the damages.